**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LISA TILUM                                        CIVIL ACTION NO: 3:03 CV973 (DJS)
     Plaintiff

VS.

STATE OF CONNECTICUT,
DEPARTMENT OF TRANSPORTATION:
    Defendant                                        MARCH 31, 2004


**PLAINTIFF'S THIRD REQUEST FOR DISCLOSURE AND PRODUCTION**

The Plaintiff in the above-captioned action hereby requests, pursuant to Federal

Rules of Civil Procedure Sections 33 and 34 and Local Rule 39, that the Defendant

answer under oath the following requests for disclosure and production and file

amended answers to the date of trial as additional information is discovered.

**Definitions**

(1) *Communication.* The term "communication" means the transmittal of
information (in the form of facts, ideas, inquiries or otherwise).

(2) *Document.* The term "document" is defined to be synonymous in meaning
and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A
draft or nonidentical copy is a separate document within the meaning of this term.

(3) *Identify (With Respect to Persons).* When referring to a person, to "identify" means
to provide, to the extent known, the person's full name, present or last known address, and
when referring to a natural person, additionally, the present or last known place of
employment. Once a person has been identified in accordance with this subparagraph, only
the name of that person need be listed in response to subsequent discovery requesting the
identification of that person.

Exhibit 5

LA w OfflU,

BECK AND ELDERGILL, P.c.
H7 1.1'-11" """11 ' \1ANIII\I",CTOf>040' iHoI)Mo.,60h' )1"""" 02702

(4) *Identify (With Respect to Documents).* When referring to documents, to "identify" means to provide, to the extent known, information about the (i) type of document; (ii) its general subject matter; (Hi) the date of the document; and (iv) author(s), addressee(s) and recipients(s).

(5) *Parties.* The terms "plaintiff' and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(6) *Person.* The term "person" is defined as any natural person or any business, legal or governmental entity or association.

(7) *Concerning.* The term "concerning" means relating to, referring to, describing, evidencing or constituting.

(8) *Incident.* The term "incident" shall refer to the entire transaction between plaintiff and defendant as described in the Complaint to this action.

(9) *Statement.* The term "statement" refers to a written statement in the handwriting of the person making it, or signed, or initialed, or otherwise in writing !3dopted or approved by the person making it, including any information prepared and stored on computer or by other electronic means.

(10) *All/Each.* The terms "all" and "each" shall both be construed as all and each.

(11) *And/Or.* The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. (12) *Number.* The use of the singular form of any word includes the plural and vice versa.

2

**BY WAY OF INTERROGATORIES:**

1.      For each individual listed, state the salary earned from May 2000 through the
present date:

        a. Fred Chojnicki
        b. Lev Laber
        c. Al Mancini
        d. Dennis Murphy
        e. Robert Scotti

**Answer:**

**BYWAY OF PRODUCTION:**

Produce copies, or make available for inspection, the following documents:

1. Any analysis conducted by DOT or CHRO concerning the use of reclassifications
and the promotional process. (See Exhibit A, attached, at para. 13.)

**<u>Response:</u>**

3

2. Any documents concerning any analysis of reclassifications described in Question #1.

**Response:**

3. Any document concerning the DOT Affirmation Action review, monitoring and/or approval of hires and promotions prior to the job offers being made, including participation by the Affirmative Action office on interview panels. (See Exhibit B, attached.)

**Response:**

4. Any documents generated as a result of Affirmative Action office participation in interviews.

**Response:**

5. To the extent not already provided, any documents concerning interviews for DOT positions for which Plaintiff was a candidate from 1995 through the present date.

**Response:**

4

6. Service ratings from 1995 through the present for:

    a. Harry Harris
    b. Stephen Markwald
    c. Mark Neri

**Response:**


PLAINTIFF


By: Kath~ee~'ill

Beck & Eldergill, P.C. 447
Center Street
Manchester, CT 06040
*(860)* 646-5606
Fed Bar No: ctOO024

**CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 31 st day
of March, 2004, to the following parties:

Margaret Q. Chapple
Assistant Attorney General
55 Elm Street
P.o. Box 120
Hartford, CT 06141-0120

CL

Kathleen Eldergill

TilumID&P303-04.pld

5

(Adverse Impact Test #6: Director of Equal Opportunity Assurance, Margo S. Kilbon - January 31,2002)

Status: The Affirmative Action Division staff receive monthly reports on disciplinary activity plus copies of all disciplinary letters. They also participate regUlarly in fact-finding hearings in their assigned units prior to disciplinary action occurring.

11.    A program goal is set that the Division of Contract Compliance will provide outreach to small., minority, and women contractors, and consultants to have more firms become certified in the state SBE program and the DOT DBE programs.

(M~go S. Kilbon, Director of Equal Opportunity ~surance -:- January 31,2002)

Status: The Director' of .Equal OppoIWnity Assurance and Division of Contract Compliance staff participated in a number of outreach workshops in order to increase the number of DBE and SBE firms. These included the Greater New Haven Business Professional Association; New Ventures Community Development Corporation; CT Small and Minority Business Showcase; Women in Trades and Nontraditional Occupations Conference; SBA annual pro grain; and Connec1icut Women Entrepreneurs Day. Staff also conducted workshops at the DOT as follows: Public Transportation DBE/SBE liaisons workshop; '~ow to Get a Government Contract" cosponsored with SCORE; and Open House for CT Transit potential SBFJDBEs. The Department also placed ads in the Women in Trades Program, and in the African American Affairs Annual Dinner Program. (See Chapter III EXternal Communication)

12.    A program goal has been set to develop and distribute an annual survey to executive staff: mm;tagers and supervisors to assist in the evalua1ion of the Department's affirmative ac1ion programs.

(Margo S. Kilbon, Director of Equal Opportunity Assurance - January 31,2002)

Status: The Department developed an annual survey to evaluate the Department's. Affirmative Ac1ion program. On March 9, 2001 this survey was distributed and the results reported on in the May 15, 2001 Affirmative Action Plan. The Commissioner, Affirmative Action Division s1:af£: and the Affirmative Action Advisory Committee all provided comments for the survey. [Ex. 4]

13.    Per CHRO review comments: A program goal has been set to review the use of reclassifications in the promotional process.

(Margo S. Kilbon, Director of Equal Opportunity Assurance - January 31,2002)

Status: An analysis of reclassifications was conducted as part of a program goal recommended by the CHRO. The use of the reclassification process occurs for two main reasons. The first reason is the employees, as part of their career progression, are

Exhibit A

{ (. - 12-.s

reclassified as they take on more advanced duties. - This occurs for example, 'when Engineer Interns become Transportation Engineer l' s. The second reason occurs when employees job duties change and then- new titles more appropriately refl~ct the new duties. For example, Transportation Engineer l's are reclassified to the 2 level when doing more. complex, advanced work. This also occurs in the maintenance series particularly in the units where trade skills are requiIecL The review also showed there

were reclassifications for all race/gender groups with no.. pattern of discrimIDation.

Status: The Department has conducted diversity training for all DOT employees which was completed July 25, 2000. Additional training has been required by CHRO and the Department has requested proposals ITom the 6 approved vendors to conduct this training. Human Resources Consortium has been selected and the training will start in May 2001. (Exhibit 3)

5~    A program goal is set for the Affirmative Action division to review, monitor and approve the interview process and selection of candidates prior to hire or promotion, and to participate in interview panels.

(Adverse Impact Test #4,. Director of Equal Opportunity Assurance, Margo S. Kilbon- January 31, 2001)

Status: The Department has developed and impleme1;1ted a procedure where the Affirmative Action Office staff review, monitor and approve all hires and promotions prior to the offer being made. Affirmative Action Division staff routinely participate in interview panels.

6.    A program goal is set to work with Department employees on how to interview for promotional opportunities.

(Adverse Impact Test #4, Director of Equal Opportunity AssUrance, Margo S. Kilbon - January 31, 2001)

Status: Information on interviewing skills has been collected to be available for use by employees as part of career counseling. The library has purchased books, tapes, and ~deos to assist employees in interviewing.

7.    A program goal is set for Affirmative Action Division st3.ff to meet with all Department unit heads, to discuSs recruitment needs and specific job requirements for vacancies within their units.

(Adverse Impact Test #5, Director of Equal Opportunity Assurance, Margo S. Kilbon January 31,2001)

Status: Affirmative Action Division staff have met with the following Department unit heads: 4 District Maintenance Managers; 4 District Engineers; Construction Administrator; Maintenance Administrator; Director of Contract Administration; Transportation Aviation Administrator; Property Facilities Control Manager; Fiscal Administrative Manager Federal Fiscal Office; Maintenance Superintendents; District and Administration Building Personnel Officers; Director of Personnel; all Maintenance Garage Supervisors; Transportation Public Transit Administrator; Director of Fiscal/Special Projects; Transportation Engineering Administrator; Manager of Design Services; Manager of State Design; Director of Purchasing and Materials Management, Transit and Rideshare Administrator.

Exhibit B